**In re ALITHOCHROME CORPORATION (a New York Corporation), Debtor,**

**TRANS UNION LEASING CORPORATION, Plaintiff,**

v.

**ALITHOCHROME CORPORATION (a New York Corporation), Defendant.**

Bankruptcy No. 82 B 10335.
Adv. No. 5572–A.

United States Bankruptcy Court,
S.D. New York.

Nov. 17, 1983.

VI web fed printing press from the George Hantscho Company, Inc. (Hantscho press).

Pursuant to these agreements, Alithochrome granted security interests in the presses to Trans Union. With respect to the Harris press, U.C.C. financing statements were filed with the Massachusetts Secretary of State and with the Hampton County Registry of Deeds. With respect to the Hantscho press, financing statements were filed with the Clerk of Suffolk County, New York; New York Secretary of State; Hampton County Registry of Deeds; and the Massachusetts Secretary of State.

Both presses were sold for $1.5 million free and clear of liens by Alithochrome, pursuant to an order of the court. The parties agreed that the proceeds from the sale would be held in escrow and that Trans Union's rights, if any, would attach to these funds.

Gilmartin, Poster & Shafto, New York City, for plaintiff.

Stroock & Stroock & Lavan, New York City, for defendant.

Platzer & Fineberg, New York City, for creditors committee.

## DECISION ON APPLICATION TO RE– DOCKET OR VACATE PRIOR ENTRY OF "ORDER AND JUDGMENT"

EDWARD J. RYAN, Bankruptcy Judge.

On February 23, 1982 Alithochrome Corporation (Alithochrome) filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The debtor was continued in possession of its property and in the operation of its business pursuant to Section 1107 of the Code.

On or about October 22, 1979 Alithochrome and Trans Union Leasing Corporation (Trans Union) had entered into an agreement whereby Trans Union agreed to finance Alithochrome's purchase of a certain Harris M–110 Printing Press (Harris press). In June 1980 Trans Union agreed to finance Alithochrome's purchase of a Mark

On April 23, 1982, Trans Union commenced an adversary proceeding seeking *inter alia* turnover of the proceeds of the above sale and a declaration that it had had a valid and perfected first security interest in the Harris and Hantscho printing presses, which interest attaches to the proceeds. Alithochrome answered claiming *inter alia* that Trans Union's security interests in the presses were void.

A trial was held on April 8 and April 11, 1983 to determine the validity of Trans Union's purported security interests. Pursuant to U.C.C. 9–401(1)(c) a local filing would be required to perfect Trans Union's security interest if Alithochrome maintained a place of business in Springfield, Massachusetts. No such local filing was made.

By decision dated June 27, 1983 [1] this court found that Alithochrome did maintain such a place of business in Springfield, and directed the settlement of an appropriate order.

By notice of settlement dated July 8, 1983, Alithochrome presented an "Order and Judgment" to this court adjudging

**1.** *Alithochrome v. Trans Union Leasing Corp.,* 31 B.R. 352 (S.D.N.Y.1983).

Trans Union's security interest in the presses and the proceeds unperfected. This "Order and Judgment" was signed on July 19, 1983. On that same date, this "Order and Judgment" was certified to the district court for approval pursuant to Emergency Rule I(e). Such approval was granted on July 21, 1983.

Pursuant to Bankruptcy Rule 5003 the clerk of the Court maintains a main docket, and a subsidiary or adversary docket.

This court's decision dated June 27, 1983; "Order and Judgment" dated July 21, 1983; and the District Court approval dated July 21, 1983 were entered on the "subsidiary docket." No notice of these entries was sent out by the Clerk of the Court.[2]

As counsel for Trans Union, Gilmartin, Poster and Shafto (Gilmartin) had intended and intends to appeal this court's adverse decision. However, Gilmartin failed timely to file a notice of appeal.

From July 27, 1983 until August 25, 1983, Mr. Blumenschein of the Gilmartin firm and a paralegal from his office had checked the *main* docket twice a week.

Unfortunately for them, but understandably, neither Mr. Blumenschein nor the paralegal knew of the existence of a *subsidiary* docket.

The "main docket" indicates the commencement of the adversary proceeding, *Trans Union Leasing Corp. v. Alithochrome Corp.* At the end of this typewritten entry, there appears a handwritten entry in red ink: "(Closed—7/19/81)." No specific reference is made to the adversary docket. Of the seventeen adversary proceedings noted in the main docket, fourteen bear reference to the "daversary docket" [sic] for further entries.

On August 31, 1983 Gilmartin was served by Stroock & Stroock & Lavan, attorneys for Alithochrome, with a notice of hearing for an order directing the escrow agents to turn over to the debtor the sums in controversy.

Bankruptcy Rule 8002 provides that notice of appeal is to be filed within 10 days of the "entry" of judgment. On a showing of excusable neglect the Bankruptcy Court may extend the time for filing of a notice of appeal up to 20 days. In any event, Gilmartin's time to file a notice of appeal expired prior to August 31, 1983.

By order to show cause dated September 8, 1983 Trans Union seeks an order:

(a) directing the Clerk of this Court to enter in docket 82 B 10335 [the main docket] and forward to the Clerk of the District Court for the Southern District of New York for filing in accordance with Section (b) [sic] of Emergency Bankruptcy Rule I the Order and Judgment of this Court dated July 19, 1983 and approved by the United States District Court as a judgment of that Court on July 21, 1983; or

if part (a) of this Motion is denied, granting plaintiff's request that it be relieved from the judgment entered herein on July 25, 1983 pursuant to Federal Rules of Civil Procedure 60(b)(6) on condition that the judgment be re-proposed, approved and re-docketed forthwith and for such other and further relief as may be appropriate in the circumstances.

This controversy bristles with unique and intriguing questions concerning the power of the court to relieve a party from its failure to file a timely notice of appeal.

Incidental questions resulting from the fallout of *Marathon,* include the construction of Emergency Rule I and its impact on bankruptcy practice and procedure.

For example, when on certification a district court reviews a bankruptcy judge's judgment, should the district court's action be docketed on the records of the clerk of that district court so that it becomes a judgment of the district court? If so, is the time to appeal from the judgment—be it judgment of the bankruptcy court or of the district court—ten days or 30 days?

---

**2.** Bankruptcy Rule 9022 provides that lack of notice of the entry does not affect the time to

appeal within the time allowed.

I am of the opinion there is no need to enter this thicket. This court chooses to grant relief to the applicant pursuant to Bankruptcy Rule 9024 and F.R.Civ.P. 60(b)(6).

The record shows that the plaintiff did exercise due diligence[3] in attempting to monitor the case docket so that it might process the appeal which it intended to take and perfect as soon as it received knowledge that a judgment had been entered.

It is entirely understandable that even a seasoned associate of the law firm assisted by a paralegal missed the entry in the adversary proceeding docket that showed that an "Order and Judgment" of the Bankruptcy Court had been entered.

The court and the bar have been wrestling with the procedural and administrative problems generated by the advent of the Bankruptcy Code. For example, it appears that the practice ought to be that upon filing of a summons and complaint in an adversary proceeding, a notation be made in the main docket reflecting the commencement of such adversary proceeding and referring the reader to the subsidiary docket. Such an entry was not made with respect to the debtor's controversy with Trans Union. Instead, the main docket indicates only the commencement of the Trans Union litigation, and a handwritten entry marked "Closed 7/19/83." The hearing failed to disclose the author of the cryptic handwritten entry and there was no explanation given for its Delphic language.

Bankruptcy Rule 9021 provides *inter alia* that every judgment in an adversary proceeding or contested matter is to be set forth on a separate document.[4] No such separate document was entered on the dockets of the court in this matter.

There is no need to discuss the morass of problems that the failure to follow the separate document requirement creates. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1958).

I am persuaded that pursuant to Federal Rule 60(b)(6) the interests of justice require that the prior "entry of judgment" ought be, and the same hereby is vacated so as to trigger properly a time for the filing of a notice of appeal to the District Court. *See Speare v. Consolidated Assets,* 360 F.2d 882 (2d Cir.1966).

Settle an order directing entry of judgment with a proposed judgment for the clerk to enter.

---

**3.** *See Mennen Co. v. Gillette Co.,* N.Y.L.J. Oct. 17, 1983 at 15 n. 5, col. 6 (2d Cir. Oct. 5, 1983).

**4.** We are informed that the clerk of this District Court does not enter on that court's dockets "approvals" on certification.