**In re Heidi M. ZELLER, Debtor.**

**Carolyn ELIAS and Burton Elias, Plaintiffs-Appellants,**

**v.**

**Heidi M. ZELLER, Defendant-Appellee.**

BAP No. NC–83–1053VEAS.

Bankruptcy No. 582–02700–M.

Adv. No. 821630.

United States Bankruptcy Appellate Panels for the Ninth Circuit.

Argued Sept. 22, 1983.

Decided April 30, 1984.

James P. Madden, Lagorio, Madden & Stevens, Los Altos, Cal., for plaintiffs-appellants.

Charles E. Logan, Adelman, Litherland & Logan, Inc., San Jose, Cal., for defendant-appellee.

Before VOLINN, ELLIOTT and ASHLAND, Bankruptcy Judges.

## OPINION

SIDNEY C. VOLINN, Bankruptcy Judge:

### FACTS

Appellee/debtor, Heidi M. Zeller, purchased from appellants Burton and Carolyn Elias a dog-grooming business named The Pink Poodle. She signed a purchase agreement on December 22, 1980, promising to pay $65,000 plus cash for inventory. Ms. Zeller contended that the Eliases made certain oral representations to her about the profitability of the business. She did not inspect the books and records, nor obtain an accounting because the accountant who had agreed to assist her suffered a heart attack. The agreement provided that, as security for the balance owed, "Sellers agree to accept a Second Deed of Trust on the Buyer's house."

Ms. Zeller took possession of the business in January 1981. After operating the business for approximately one-and-a-half years, Ms. Zeller concluded that it would not bring her enough money to make payments required by the agreement. She retained an attorney and they demanded and reviewed the business records. Her counsel then sent a letter, dated February 24, 1981, to the Eliases stating that Ms. Zeller chose to rescind the purchase agreement on grounds which included fraud, duress and misrepresentation.

The Eliases sued in superior court for specific performance of the purchase agreement. The superior court issued a judgment on June 25, 1982, which ordered Ms. Zeller to "forthwith" execute a deed of trust on her house for the remaining balance of $68,108.44 due on the purchase price of the dog-grooming business.

On July 9, 1982, before the judgment became final, Ms. Zeller filed a Chapter 13 petition in bankruptcy. On July 15, 1982, she sent the Eliases a notice of rejection of the purchase agreement under 11 U.S.C. § 1322(b)(7) and offered to return the business to them. They refused to accept it.

The Eliases filed a complaint for relief from the automatic stay. On November 17, 1982, the bankruptcy court signed an order denying their claim as secured and allowing it as an unsecured claim in the full amount of $68,108.44. A copy of the order was served on the Eliases by mail on November 18, 1982 and the order was entered on the docket on November 22, 1982.

Counsel for the Eliases filed a Notice of Appeal and Application for Extension of Time on December 3, 1982, eleven days after the order was entered on the docket. Ms. Zeller filed a memorandum opposing the request for extension under Bankruptcy Rule 802, on the basis that it was untimely. At a hearing on December 8, 1982, the bankruptcy court granted the motion.

### Appellants' Contentions

Appellants, the Eliases, contend that:

1. They hold an equitable lien on Ms. Zeller's house, and the bankruptcy court erred by refusing to enforce it.

2. The bankruptcy court erred by failing to hold that the principle of collateral estoppel required a judgment in the Eliases' favor.

3. The bankruptcy court further erred by refusing to grant full faith and credit to the superior court's judgment.

### Debtor/Appellee's Contentions

Ms. Zeller contends that:

1. This Panel is without jurisdiction to hear the appeal because the Eliases failed to show that excusable negligence was the cause for late filing of the notice of appeal.

2. The bankruptcy court did not err by refusing to recognize the Eliases' claim for an equitable lien.

3. An unperformed decree of specific performance is defined by the Bankruptcy Code as an unsecured debt dischargeable in bankruptcy.

### Appellants' Reply Brief

The Eliases contend in their reply brief that the bankruptcy court did not err in holding that the reason for tardiness of the appeal notice—counsel's vacation out of town—constituted excusable neglect.

## DISCUSSION

### Timeliness of the Appeal

Bankruptcy Rule of Procedure 8002(a) provides that the notice of appeal shall be filed with the clerk of the bankruptcy court within 10 days of the date of entry of the judgment order or decree. The bankruptcy court entered its judgment on November 22, 1982, and the last day for a timely appeal was therefore December 2, 1983. The Eliases did not file their notice of appeal to the Bankruptcy Appellate Panel until December 3, 1982. At the hearing on the Eliases' motion for an extension, the bankruptcy court expressed his reason for granting the extension. "I can save you a lot of time if I just give you my philosophy about vacations. Vacations are sacred as far as I'm concerned, and I'm going to deny your motion [to dismiss], counsel." (Reporter's Transcript, p. 18, 1.24–25; p. 19, 1.1–2.) Other dialogue on the record obliquely suggests that Mr. Madden did not file a timely notice of appeal because the Eliases had not paid him to do so.

As Ms. Zeller has pointed out, the Ninth Circuit Court of Appeals set strict standards for reviewing an application for a time extension, in *Matter of Butler's Tire & Battery Co., Inc.,* 592 F.2d 1028 (9th Cir.1979). In *Butler,* as in the case before us, the appellant/creditor did not file a request for extension within the 10-day period following the judgment. The bankruptcy judge concluded that appellant's late request was excusable because counsel did not know of the time limit until after the 10-day period had expired, and the decision to appeal could not be made while creditor's president was out of the state. The Court of Appeals held that the bankruptcy court abused its discretion by finding excusable neglect. It held that a finding of excusable neglect under Fed.Bankruptcy Rule 802 is justified only if appellant shows "failure to learn of the entry of judgment or 'extraordinary' circumstances

where injustice would otherwise result if the untimely appeal is not heard." 592 F.2d at 1034, citing 9 *Moore's Federal Practice* § 204.13[1] at 973 (2d ed. 1975), *quoting* Committee Note of 1966 to, Fed.R. Civ.Pro. 73(a). The Court of Appeals' discussion indicates that by "failure to learn of the entry of judgment" which would except late filing, it meant that "there is jurisdiction to hear an appeal when it is the fault of the lower court that notice was not earlier filed." 592 F.2d at 1032. Such is not the case here, where the bankruptcy court timely informed Mr. Madden's office that judgment had been entered.

Even more helpful to us than *Butler* is the case of *Wildflower Landholding Association, Ltd.*, 34 B.R. 4 (Bkrtcy.M.D.Florida 1983). Counsel filed a request for extension of time sixteen days after the bankruptcy court entered an order. The court denied the request, holding that counsel's absence from the office due to the birth of his child, and resulting confusion during that time, did not constitute excusable neglect. The court held that:

> [W]here an attorney is absent from his practice due to circumstances which could be reasonably anticipated, his absence and resulting failure to timely file a notice of appeal does not constitute excusable neglect. This is especially true where, as here, the attorney is not a sole practitioner, but engages in the practice of law in a firm with at least two other attorneys.

34 B.R. at 5.

In the case before us, as in *Wildflower,* the absence of appellant's counsel from his office could have been reasonably anticipated. Mr. Madden should have turned his caseload over to another attorney for proper supervision. (We note by the firm name that he practices with at least two other attorneys.) The Eliases' motion for an extension was even further weakened by the fact that Mr. Madden returned to his office on November 29, allowing him three full days to file a notice of appeal before the 10-day period expired. (Reporter's Transcript, p. 19, 1.18–21.)

Clients' failure to pay for an appeal, even if that was a contributing reason for Mr. Madden's tardy filing of the appeal notice, also does not constitute excusable neglect. He would have needed little time to prepare the notice, thereby protecting the Eliases' right to appeal.

CONCLUSION

Because the notice of appeal was filed late without a showing of excusable negligence, the bankruptcy court abused its discretion by granting an extension of time for filing the notice of appeal, and by hearing the appeal. We therefore order the appeal DISMISSED and remand for disposition consistent with this order.